IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CANTALOUPE, INC.,<br><br>                                Plaintiff,<br><br>v.<br><br>AXIS INSURANCE COMPANY,<br>                                Defendant. | CIVIL ACTION NO.:<br><br><br>COMPLAINT AND<br>DEMAND FOR JURY TRIAL |

**COMPLAINT**

Plaintiff Cantaloupe, Inc., by and through its undersigned counsel, states as its Complaint against Defendant AXIS Insurance Company the following:

**INTRODUCTION**

1. Plaintiff Cantaloupe, Inc., formerly known as USA Technologies, Inc., (hereinafter, "CTLP" or "Plaintiff"), is an electronic payment technology company, focusing on the self-serve retail market. CTLP purchased a multi-layered D&O insurance program for the period July 27, 2018 to January 21, 2020 to protect itself and its various directors and officers from the risk of claims for alleged violations of securities laws and breaches of fiduciary duty, among other potential claims. Defendant AXIS Insurance Company ("AXIS") sold CTLP the third-layer excess D&O policy that is $5 million xs $15 million (the "AXIS Policy" or "Policy").

2. In September 2018, CTLP and its Directors and Officers became the subject of the first of the following multiple securities actions, shareholder demands, and government investigations that were noticed for coverage under CTLP's D&O insurance policies:

- A consolidated securities class action ("Securities Action");

- Shareholder derivative demands and a subsequently filed derivative complaint ("Shareholder Demands");

- Proxy litigation filed by Hudson Executive Capital LP ("Hudson") (the "Proxy Litigation");

- A Grand Jury Subpoena from the U.S. Department of Justice ("DOJ Subpoena" or "Subpoena");

- A shareholder demand from Hudson ("Hudson Demand"); and

- A formal order entered by and tolling agreement with the U.S. Securities and Exchange Commission ("SEC Inquiry").

(The above items are collectively referred to as the "Matters.")

3. CTLP's primary insurance carrier and first excess D&O insurance carrier exhausted their policy limits to defend and settle the Securities Action and investigate the Shareholder Demands. AXIS then denied coverage and refused to pay, requiring CTLP to pay $5 million of its own funds to cover losses that AXIS should have paid. As set forth in more detail below, the fourth insurance layer above AXIS has recognized that most of the Matters are covered claims, and consequently, among all of CTLP's insurers, *only AXIS* failed and refused to honor any of its insurance obligations. In all, CTLP paid millions of dollars of its own funds in defense and settlement costs for the Matters in excess of the underlying limits of the first two insurance layers and CTLP's indemnification and other expenses continue to accumulate. This amount includes $2.6 million that CTLP was forced to pay to settle the Securities Action after AXIS wrongfully denied coverage for that litigation.

4. Although all of the Matters trigger coverage under the AXIS Policy, AXIS has refused to provide coverage for all but one of them. AXIS asserts that its so-called "Prior Knowledge Exclusion" applied to all of the claims at issue, and that amounts paid by the underlying insurance companies did not erode the underlying limits of the policy. ***AXIS has never asserted that it was fraudulently induced to sell the Policy to CTLP. Nor has it refunded***

***CTLP's premium.***  Yet, if AXIS' denial of coverage is upheld, it will in effect work a rescission of the Policy without a refund of premium, because CTLP will be left with no way of accessing the insurance coverage it purchased from AXIS for claims, like the Proxy Litigation, where ***AXIS has not even attempted to dispute coverage, other than invoking an exclusion that simply does not apply***.  AXIS cannot have it both ways.

5. Pennsylvania law requires AXIS to advance defense costs on behalf of CTLP and its directors and officers unless and until AXIS has proven that there is no possibility of coverage.  In order to avoid its duty to advance defense costs, AXIS must prove that all of the allegations against CTLP and the directors and officers fall within the Prior Knowledge Exclusion.  AXIS has not met this burden and will not be able to meet it later, because it cannot show that any of the directors or officers in question had knowledge of a fact, circumstance, or situation that was a necessary "but for" cause of any of the Matters.  Nor can AXIS show that as of July 27, 2018, such fact, circumstance or situation reasonably could have given rise to a claim under the Policy.

6. The Prior Knowledge Exclusion does not preclude coverage for claims based on wrongdoing that occurred after July 27, 2018.  AXIS ignores that all of the Matters involve allegations of wrongdoing occurring after July 27, 2018, and, therefore, require AXIS to advance defense costs.  Even assuming that any of the allegations could potentially be excluded, AXIS still has a duty to reimburse CTLP for the settlements of the Securities Action and the Shareholder Demands because AXIS cannot confine the claims to those clearly outside the scope of coverage without a factual finding establishing on what basis the underlying plaintiffs would have prevailed.  In sum, AXIS is liable for the full $5 million of its policy limits, plus all recoverable fees, costs, interest, and equitable relief available to CTLP.

7. AXIS also asserts that two of the Matters at issue—the DOJ Subpoena and the SEC Inquiry—do not trigger its coverage at all regardless of the Prior Knowledge Exclusion. AXIS is incorrect on both counts, as detailed below. Further, the amounts incurred by CTLP in the Matters that AXIS admits trigger coverage but for the Prior Knowledge Exclusion exceed AXIS's Policy limits. For these reasons, CTLP demands payment of the full $5 million of the AXIS Policy limits, plus all recoverable fees, costs, interest, and equitable relief available to CTLP.

## PARTIES

8. CTLP is a Pennsylvania corporation with a principal place of business in Malvern, Pennsylvania.

9. AXIS is an Illinois corporation with a principal place of business in Alpharetta, Georgia.

## JURISDICTION AND VENUE

10. This Court has original subject matter jurisdiction under 28 U.S.C. § 1332, in that it is a civil action between citizens of different states in which the amount in controversy exceeds $75,000, exclusive of costs and interest. This Court has personal jurisdiction over AXIS because AXIS marketed, sold, and entered into the insurance contract at issue in this case in Chester County, Pennsylvania.

11. Venue is proper in this District because a substantial part of the events or omissions giving rise to the claims occurred in Chester County, Pennsylvania, which is in this District.

## FACTUAL BACKGROUND

### A. CTLP Purchases D&O Coverage

12.  CTLP incorporates by this reference the allegations in Paragraphs 1-11 as if set forth in full herein.

13.  CTLP purchased the AXIS Policy to protect CTLP and CTLP's directors and officers from claims such as those asserted in the Matters.

14.  CTLP purchased a multi-layered D&O liability insurance program from CNA, Endurance American Insurance Company ("Endurance"), and AXIS for the policy period July 27, 2018 to January 31, 2020. The AXIS Policy is $5M xs $15M and sits above: (i) a primary policy sold by CNA (with limits of $10 million) and (ii) an excess policy sold by Endurance (with limits of $5 million). There is a fourth layer of coverage above AXIS, which, as noted above, has acknowledged coverage for most of the Matters subject to a reservation of rights on issues unrelated to this case or the Prior Knowledge Exclusion.

15.  The CNA Policy provides coverage for, *inter alia*, claims against insured persons; coverage for securities claims against CTLP; coverage for shareholder derivative demand investigation costs; and coverage for inquiry costs. A true and correct copy of the CNA Policy is attached hereto and marked as **Exhibit A.**

16.  The CNA Policy also contains an allocation provision, which states:

> If a Claim or Inquiry made against an Insured includes both covered and uncovered matters or if a Claim or Inquiry is made against Insureds who are extended coverage therefore and others (including an Insured Entity for Claims other than Securities Claims) who are not extended coverage therefore, the Insureds agree that there must be an allocation between insured and uninsured loss. The Insureds and the Insurer shall exert their best efforts to agree upon a fair and proper allocation, based on the relative legal and financial exposures, between insured Loss and uninsured loss.

17. The CNA Policy requires the insurance company to "advance Defense Costs no later than sixty days after the receipt by the Insurer of bills detailing the amounts owed in excess of the applicable Retention" subject to the condition that

> if the Insureds and the Insurer cannot, after exerting their best efforts as set forth in 3. above [the Policy's allocation provision], agree on an allocation of insured and uninsured Defense Costs, the Insurer then shall advance the percentage of Defense Costs that the Insurer states to be fair and proper until a different allocation is agreed upon or determined pursuant to the provisions of this policy and applicable law.

CNA Policy at §V.4.

18. The AXIS Policy follows form to the CNA Policy and attaches

> after (i) the insurers of the Underlying Insurance, the Insureds or others on behalf of the Insureds shall have paid in legal currency amounts covered under the respective Underlying Insurance equal to the full amount of the Underlying Limit, and (ii) the retention or deductible, if any, applicable under the Underlying Insurance has been satisfied.

AXIS Policy at § I.  A true and correct copy of the AXIS policy is attached hereto and marked as **Exhibit B.**

19. The AXIS Policy defines "Underlying Limit" as "an amount equal to the aggregate of all limits of liability set forth in the Schedule of Underlying Insurance attached hereto," which is the $15 million aggregate limits of the CNA Policy and the Endurance Policy. AXIS Policy at § II.F.  The AXIS Policy provides $150,000 of Shareholder Demand Investigation Cost Coverage excess of $500,000.  AXIS Policy at End. 3.

20. The AXIS Policy contains a Prior Knowledge Exclusion Endorsement, which states:

> This Policy shall not apply to any claim described below based upon, arising out of or attributable to any fact, circumstance or situation of which, as of the respective date indicated below any Insured had

knowledge and reasonably could give rise to a "Claim" as that term is defined in the Followed Policy:

July 27, 2018, for any claim covered under the Followed Policy; and the Insurer shall not recognize payment for such claim under the Underlying Insurance as reducing the Underlying Limit.

For the purpose of determining the applicability of this Exclusion among Insureds, the exclusion severability provision contained in the Followed Policy shall apply.

Policy at End. 7.

    21.    The severability provision in the CNA Policy states as follows:

If the statements, information or representations in the Application were not accurate and complete and such inaccuracy or incomplete disclosure materially affected either the acceptance of the risk or the hazard assumed by the Insurer under the policy, then the Insurer shall have the right to void coverage:

    1.    under Insuring Agreement A.2, with respect to any Insured Entity to the extent it indemnifies an Insured Person who knew as of the effective date of this policy the facts that were misrepresented or omitted;

    2.    under Insuring Agreement A.3, with respect to any Insured Entity if the Chief Executive Officer or Chief Financial Officer of the Named Insured knew as of the effective date of the policy the facts that were misrepresented or omitted.

The foregoing applies even if an Insured Person did not know that such inaccurate or incomplete disclosure had been provided to the Insurer or included within the Application.

CNA Policy at § X.

### B. AXIS Unreasonably Denies Coverage for CTLP's Claims

22. CTLP noticed the following Matters for coverage under its D&O Policies. Because CNA and Endurance exhausted their policy limits by paying to defend and settle the Securities Action and to investigate the Shareholder Demands, the AXIS Policy is now the primary coverage for costs incurred in connection with the Matters in excess of the Underlying Limits.

#### 1. The Securities Actions

23. On September 11, 2018, CTLP, CTLP's then-CEO Stephen Herbert, and CTLP's then-CFO Priyanka Singh became the subject of a securities class action alleging violations of the Securities Exchange Act ("Exchange Act"). *See Gouet v. USA Technologies, Inc., Stephen Herbert, Priyanka Singh*, No. 2:18-cv-13759 (D.N.J. filed Sept. 11, 2018) ("*Gouet*").

24. Two more complaints were filed against CTLP, Herbert, and Singh on September 13 and October 3, 2018, also asserting violations of the Exchange Act. *Gray v. USA Technologies, Inc., Stephen P. Herbert, Priyanka Singh*, No. 2:18-cv-13860 (D.N.J. filed Sept. 13, 2018) ("*Gray*"); *Phillips v. USA Technologies, Inc., Stephen Herbert, Priyanka Singh*, No. 2:18-cv-14590 (D.N.J. filed Oct. 3, 2018) ("*Phillips*"). These lawsuits asserted class periods of November 2017 through September 2018.

25. On May 17, 2019, the City of Warren Police and Fire Retirement System ("CWPFRS") filed a complaint against CTLP, Herbert, Singh, CTLP Directors, and the investment banking firms who underwrote CTLP's May 23, 2018 secondary public offering ("SPO"). *City of Warren Police and Fire Retirement System v. USA Technologies, Inc., et al.*, Case No. 2019-04821-MJ (Ct. Com. Pls. Chester Cnty. filed May 17, 2019). CWPFRS alleged

that defendants had violated the Exchange Act by making allegedly false and misleading statements and omissions in the Registration Statement and Prospectus relating to the SPO.

26. A similar complaint was filed in federal court on August 12, 2019 by the University of Puerto Rico Retirement System ("UPRRS"), which was immediately consolidated with *Gouet*, *Gray*, and *Phillips* pursuant to the federal court's prior order consolidating and appointing a lead plaintiff for those actions. *University of Puerto Rico Retirement System v. USA Technologies, Inc., et al*., No. 2:19-cv-16597 (D.N.J. filed Aug. 12, 2019) ("UPRRS").

27. On November 20, 2019, the lead plaintiff in the consolidated federal securities actions filed a consolidated complaint on behalf of (i) a class of individuals who purchased CTLP stock from August 22, 2017 through February 6, 2019, seeking to recover damages for CTLP's and the Officer Defendants' alleged violations of the Exchange Act; and (ii) a subclass of individuals who purchased CTLP stock in connection with the SPO, seeking to recover damages for all Defendants' alleged violations of the Securities Act. Consol. Compl. at p. 1.

28. The Consolidated Complaint alleged wrongdoing on the part of the defendants through February 2019. The plaintiffs asserted that CTLP had engaged in "premature and/or inappropriate recognition of revenues and reporting of connections," failed to report employee complaints, failed to ensure effective communication between finance and sales, and suffered from "substantial tonal concerns." Consol. Compl. ¶ 125. The Consolidated Complaint also asserted that CTLP's auditor had discovered accounting issues in addition to those under investigation by the Audit Committee of CTLP's Board, that were "primarily due to the lack of supporting documentation for various historical accounting reserves and policies, failure to adequately and consistently complete the financial integration of USAT [CTLP], and the inadequate performance of [CTLP's] internal controls during the 2019 fiscal year." Consol.

Compl. ¶¶ 137-139.  The Consolidated Complaint also asserted that various CTLP SEC filings from September 11, 2018 until February 6, 2019 constituted "Partial Disclosures" omitting material facts.  *Id*. at pp. 36-43.

29. At a mediation on February 27, 2020, the parties to the Securities Action reached a settlement in principle in the amount of $15.3 million.  In June 2020, CNA and Endurance paid their remaining policy limits of $7,938,536.74 and $4,750,000, respectively, towards the settlement, exhausting those policies.  CTLP paid $2,611,463.26 toward the settlement and incurred approximately $343,036.18 in unreimbursed defense costs with respect to the Securities Action.  AXIS refused to contribute to the settlement or pay defense costs on the grounds that (i) the Prior Knowledge Exclusion precluded coverage for CTLP, Herbert, Singh, or the Director Defendants who were Audit Committee Members (Barnhart, Metzger, and Schoch); (ii) the Exclusion precluded payments by CTLP and the underlying insurance companies (CNA and Endurance) for defense costs or settlement costs that could be allocated to CTLP, Herbert, Singh, or the Audit Committee Members from eroding Underlying Limits and those defendants collectively shared the most exposure; and (iii) a reasonable allocation of potential liability for other CTLP Board Member Defendants would not reach the Policy's attachment point.

### 2. The Shareholder Demands

30. In October 2018 and August 2, 2019, CTLP received three shareholder demand letters from putative shareholders Peter D'Arcy, Chiu Jen-Ting, and Stan Emanuel ("Shareholder Demands" or "Demands").  The October 2018 Demands alleged that Herbert, Singh, and CTLP Directors had breached their fiduciary duties of care, loyalty and good faith by "failing to disclose that USA Technologies' [CTLP] treatment of contractual arrangements in financial statements would lead to an internal investigation and the inevitable delay of its annual report for

the 2018 fiscal year leaving the Company open to serious financial risks." The Jen-Ting Demand asserted that the Directors and Officers had violated "core fiduciary principles from at least November 9, 2017 through September 11, 2018."

31.     The Demand by Stan Emanuel, sent in August 2019, alleged that Herbert, Singh, the CTLP Directors, and several additional CTLP Officers breached their fiduciary duties by: *inter alia* (i) knowingly, recklessly, or negligently approving the issuance of false statements that misrepresented and failed to disclose material information concerning the Company's financial results and financial prospects, as well as its internal accounting and disclosure controls; (ii) willfully ignoring the obvious and pervasive problems with CTLP's internal controls, practices, and procedures and failing to make a good faith effort to correct the problems, implement adequate controls, and/or prevent their recurrence; (iii) selling or allowing another director to sell personal holdings of CTLP stock at inflated prices based on material, adverse, and nonpublic information; and (iv) wasting corporate assets by paying improper compensation and bonuses to certain Directors and Officers, as this compensation was based in part on the artificially-inflated stock price and was paid while the Directors and Officers were breaching their fiduciary duties. The Emanuel Demand alleged that the Directors and Officers had breached their fiduciary duties and violated securities laws beginning in 2017 and continuing through August 2, 2019.

32.     Consistent with Pennsylvania law, CTLP appointed a Special Litigation Committee to investigate the D'Arcy, Jen-Ting, and Emanuel Demands. CTLP incurred $359,975.06 of investigation costs (above the sublimits paid by CNA and Endurance) in connection with the Demands. CTLP later settled the shareholders claims for $500,000 in attorneys' fees plus corporate governance reforms. On January 28, 2021, the shareholders filed an action in the Court of Common Pleas, Chester County and a motion for approval of the

settlement. CNA, Endurance, and AXIS agreed not to raise lack of consent with respect to the settlement.

33.     CNA and Endurance each paid CTLP's and the SLC's costs to investigate and defend the Shareholder Demands, exhausting the sublimits of $250,000 Shareholder Demand Investigation Costs under the policies. AXIS denied coverage for the Shareholder Demands and attendant costs (which would at a minimum be covered by the $150,000 Shareholder Demand Investigation Cost sublimit in the AXIS policy) on the ground that the Prior Knowledge Exclusion precluded coverage for the Demands because the Demands involved the same alleged issues with internal controls and reporting regarding contractual arrangements as the Securities Actions.

### 3. The DOJ Subpoena

34.     On December 12, 2019, the Criminal Division of the U.S. Department of Justice issued the Subpoena to CTLP to testify before a Grand Jury and produce documents. The Subpoena sought the records of a long list of CTLP officers and employees, including Herbert, Singh, Mundy, Duska, Jones, and Harrum. The Subpoena also sought "any and all documents" related to: (1) "any and all transactions into which USAT [CTLP] entered with any customer between January 1, 2015, and the present"; (ii) "connections, including all USAT [CTLP] data pertaining to connection counts, from January 1, 2015, to the present"; (iii) bonuses and compensation for various CTLP officers and employees from January 2015 to the present; (iv) employment, disciplinary, and human resources documents for various CTLP officers and employees; and (v) "documents considered by individuals associated with USAT [CTLP] during the preparation of the SEC Annual Report, Form 10-K, filed on October 9, 2019."

35. On July 9, 2020, AXIS denied coverage for the Subpoena, asserting that (i) the Subpoena allegedly does not constitute a Securities Claim covered by Insuring Agreement A.3 of the Policy, and (ii) even if the Subpoena were a Securities Claim, the Prior Knowledge Exclusion would preclude coverage.

36. To date, CTLP has incurred in excess of $1,939,279.07 in legal fees and costs responding to the Subpoena.

### 4. The Proxy Litigation

37. On September 4, 2019, CTLP's largest shareholder, Hudson Executive Capital, sent a letter to CTLP's Board requesting information concerning the schedule and agenda of the Company's next annual shareholder meeting, so that Hudson could nominate three independent Directors to the Board. When the Board failed to respond, Hudson filed the Proxy Litigation against CTLP, its interim CEO Donald Layden, and various CTLP Directors.

38. The Proxy Litigation, filed on November 15, 2019, alleged that CTLP and its former directors attempted to prevent a shareholder vote that would remove the directors from their board positions by wrongfully refusing to hold an annual meeting of shareholders for more than nineteen months. The Complaint also alleged that CTLP and its directors retroactively and improperly amended CTLP's by-laws to deprive shareholders of the right to call a special meeting at which they could exercise their right to vote for new directors. The Proxy Litigation was settled on April 27, 2020.

39. AXIS has not provided a coverage position with respect to the Proxy Litigation. CTLP incurred approximately $1,443,723.49 in the Proxy Litigation, $68,774.01 of which was incurred in responding to Hudson's September 2019 letter, prior to the filing of the Complaint.

### 5. The Hudson Demand

40. On February 12, 2020, Hudson sent a shareholder demand to CTLP (the "Hudson Demand") demanding that the Board of Directors commence proceedings against certain of CTLP's then-current Directors and recently-resigned Directors for "breaches of fiduciary duty, aiding and abetting breaches of fiduciary duty, gross negligence, waste, unjust enrichment, indemnification, and contribution."

41. The Hudson Demand listed fifty-two specific instances of alleged misconduct on the part of the Board, **nearly all of which occurred after July 27, 2018**. Hudson withdrew the Demand as part of the April 27, 2020 settlement of the Proxy Litigation.

42. On April 16, 2020, AXIS denied coverage for the Hudson Demand. In its denial letter, AXIS asserted that the Hudson Demand was part of the same Claim as the Proxy Litigation, but coverage for the Demand was excluded under the Policy's Prior Knowledge Exclusion for the same reasons as the Securities Action and the Shareholder Demands. CTLP incurred approximately $262,500.00 investigating the Hudson Demand.

### 6. SEC Inquiry

43. The U.S. Securities and Exchange Commission issued a subpoena to CTLP's auditor BDO USA LLP on June 9, 2020 (the "SEC Subpoena"). The cover letter accompanying the SEC Subpoena stated that it "has been issued pursuant to a formal order entered by the" SEC in *In the Matter of USA Technologies*, P-02145 and demanded that BDO produce, among other things, documents pertaining to audits and interim reviews of CTLP financial statements for fiscal year 2017 through the present.

44. On September 9, 2020, AXIS denied coverage for the BDO Subpoena on the ground that "AXIS does not have information suggesting that BDO is an Insured under the AXIS

policies or that the BDO Subpoena otherwise is a Claim as defined in the policies." To date, CTLP has incurred $62,951.87 responding to the SEC Inquiry.

## CAUSES OF ACTION

### COUNT I
### BREACH OF CONTRACT

45. CTLP incorporates each and all of the allegations in Paragraphs 1- 44 as if set forth in full herein.

46. CTLP purchased a multi-layered D&O insurance program for the period July 27, 2018 to January 21, 2020 to protect itself and its various directors and officers from the risk of claims for alleged violations of securities laws and breaches of fiduciary duty, among other potential claims. Among other things, CTLP entered into the AXIS insurance policy.

47. CTLP has performed all obligations and satisfied all conditions under the AXIS insurance policy.

48. As detailed above, CTLP incurred substantial costs—including attorneys' fees, costs, and payment to settle claims—in connection with the Matters, all of which are covered by the AXIS insurance policy.

49. AXIS breached the parties' insurance contract by denying CTLP coverage for the Matters, by failing to provide a defense or otherwise pay for or indemnify legal fees and expenses, and by failing and refusing to pay the policy limits to CTLP.

50. As a direct and proximate result of AXIS' breach of the parties' contract, CTLP has been damaged in the amount of at least $5 million, plus all recoverable fees, costs, interest, and equitable relief available to CTLP.

## COUNT II
## INSURANCE BAD FAITH

51. CTLP incorporates each and all of the allegations in Paragraphs 1- 44 and 46 - 50 as if set forth in full herein.

52. AXIS acted in bad faith in denying CTLP coverage for the Matters and by failing and refusing to provide coverage for CTLP's covered claims. At all times, AXIS' conduct lacked a good faith or reasonable basis. Among other things, AXIS denied coverage for CTLP's covered claims, did not cancel the insurance contract, and yet kept CTLP's insurance premium. AXIS knew or recklessly disregarded its lack of a reasonable basis for failing to provide coverage for CTLP's claims. AXIS improperly, and in bad faith, relied upon a blanket policy exclusion without taking into consideration the facts that make that exclusion inapplicable.

53. As a direct and proximate result of AXIS' bad faith conduct, pursuant to 42 Pa. C.S. § 8371, CTLP is entitled to recover (i) interest on at least the $5 million that AXIS failed and refused to pay; (ii) punitive damages in an amount to be set by the Court; (iii) the attorneys' fees and costs incurred in prosecuting this action; and (iv) such other and further relief as imposed by the Court.

## COUNT III
## BREACH OF IMPLIED COVENANT
## OF GOOD FAITH AND FAIR DEALING

54. CTLP incorporates each and all of the allegations in Paragraphs 1- 44, 46-50, and 52 and 53 as if set forth in full herein.

55. Pennsylvania law permits a plaintiff to "bring a cause of action for breach of the contractual duty of good faith and fair dealing in the insurance context, permitting an insured to recover compensatory damages for an insurer's failure to act in good faith." *Simmons v.*

*Nationwide Mut. Fire Ins. Co.*, 788 F.Supp.2d 404, 408 (W.D. Pa. 2011) (*citing Benevento v. Life USA Holding, Inc.*, 61 F.Supp.2d 407, 425 (E.D. Pa.1999)).

56. "The duty of good faith has been defined as [h]onesty in fact in the conduct or transaction concerned." *Heritage Surveyors & Engineers, Inc. v. Nat'l Penn Bank*, 801 A.2d 1248, 1253 (Pa. Super. Ct. 2002) (*quoting Creeger Brick and Building Supply, Inc. v. MidState Bank and Trust Co.*, 560 A.2d 151, 153 (Pa. Super. Ct. 1989)).

57. As detailed above, AXIS' conduct in denying coverage for the Matters and failing and refusing to pay CTLP's claims was done in a bad faith breach of the parties' insurance contract. Moreover, AXIS' conduct effectively rescinded the insurance policy, but AXIS retained 100% of the premium. At all times, AXIS' conduct lacked good faith or a reasonable basis.

58. CTLP performed all of its contractual obligations and satisfied all conditions for AXIS' performance under the contract.

59. By taking an unreasonable position with respect to the scope and applicability of the Prior Knowledge Exclusion, as well as denying coverage for the Claims and costs of defense, AXIS denied CTLP of the benefit of the parties' bargain and insurance contract. Rather than rescind the contract, and return CTLP's premium, AXIS acted in bad faith to frustrate CTLP's ability to utilize the insurance coverage. AXIS' conduct not only breached the parties' contract, but also was intended to preclude CTLP from realizing the intended benefit of its bargain. This conduct is a breach of the implied covenant of good faith and fair dealing and is independent of CTLP's claim for breach of contract

60. As a direct and proximate result of AXIS' conduct, CTLP has been damaged in the amount of at least $5 million, plus all recoverable fees, costs, interest, and equitable relief available to CTLP.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff seeks relief from this Court in the following respects:

1. For compensatory damages, including special and general damages, according to proof;

2. For punitive damages according to proof;

3. For pre-judgment and post-judgment interest as available by law;

4. For attorneys' fees and costs; and

5. For such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

CTLP hereby demands a jury trial on all issues so triable.

Dated: January 5, 2022          **LeVAN MUHIC STAPLETON LLC**

By: /s/ *Eli Segal*
Eli Segal, Pa. ID 205845
One Liberty Place
1650 Market Street, Suite 3600
Philadelphia, PA 19103
215.402.6555
esegal@levanmuhic.com

David W. Affeld (*pro hac vice to be submitted*)
Brian R. England (*pro hac vice to be submitted*)
AFFELD GRIVAKES LLP
2049 Century Park East, Suite 2460
Los Angeles, CA 90067
310.979.8700
dwa@agzlaw.com
bre@agzlaw.com

*Attorneys for Plaintiff Cantaloupe, Inc.*