IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CANTALOUPE, INC., *Plaintiff* | : : : | CIVIL ACTION |
| v. | : : | |
| AXIS INSURANCE COMPANY, *Defendant* | : : : | No. 22-030 |

## MEMORANDUM

PRATTER, J.                                                                                              JANUARY _____, 2024

The dispute in this case concerns whether Axis Insurance breached its contract for Directors and Officers insurance with Cantaloupe when Cantaloupe faced a number of lawsuits starting in September 2018 after disclosing to investors that there was an internal investigation of accounting and financial reporting issues. Axis declined to provide coverage because of a prior knowledge exclusion ("PKE") provision of the insurance contract that precluded coverage for any claim based on, or attributable to, any fact that Cantaloupe was aware of as of July 27, 2018 that reasonably could give rise to a claim. The Court previously denied Axis's motion for summary judgment because of a factual dispute regarding the subjective knowledge of Cantaloupe, by and through its officers, prior to July 27, 2018. Cantaloupe then filed the instant motion for reconsideration asking the Court to rethink its summary judgment opinion. Although Cantaloupe has not met the high bar to succeed on its motion for reconsideration and the Court denies the motion, for the benefit of the parties, the Court expands on its already extensive analysis of the controlling *Selko* test.

"The purpose of a motion for reconsideration . . . is to correct manifest errors of law or fact or to present newly discovered evidence." *Max's Seafood Café ex rel. Lou-Ann, Inc. v. Quinteros,*

1

176 F.3d 669, 677 (3d Cir. 1999) (quotation omitted). The party seeking reconsideration "must show that (1) there has been 'an intervening change in controlling law,' (2) new evidence is available, and/or (3) there is a 'need to correct a clear error of law or fact or to prevent manifest injustice.'" *Davender v. Warden Fairton FCI*, 757 F. App'x 74, 77 (3d Cir. 2018) (quoting *Max's Seafood Café*, 176 F.3d at 677).

Here, Axis has not met this demanding bar; however, it is worth clarifying the *Selko* test. As the parties know by now, *Selko* creates a "hybrid subjective/objective" test where the subjective prong "requires the court to determine the insured's subjective knowledge of then-existing facts." *Pelagatti v. Minn. Lawyers Mut. Ins.*, No. 11-cv-7336, 2013 WL 3213796, at *6 (E.D. Pa. June 25, 2013); *Ironshore Specialty Ins. Co. v. Conemaugh Health Sys., Inc.*, No. 3:18-CV-153, 2022 WL 1540574, at *21 (W.D. Pa. May 16, 2022).

Axis takes umbrage with the Court's language that there is a genuine dispute regarding "whether Cantaloupe subjectively knew that the ongoing investigation could lead to a claim under its D&O insurance policy." Mot. for Recons., at 2, Doc. No. 57 (quoting Nov. 28, 2023 Op., at 15, Doc. No. 52). Axis argues that this is not a correct reading because "*Selko* explicitly directs that 'speculation concerning the individual [insured's] subjective understanding' whether a claim might result is irrelevant." *Id.* (quoting *Selko v. Home Ins. Co.*, 139 F.3d 146, 152 (3d Cir. 1998)). However, the reason why Axis did not prevail on summary judgment is not because there was speculation regarding Cantaloupe's subjective understanding, but rather because there was a factual dispute regarding what was Cantaloupe's subjective knowledge of then-existing facts. Nov. 28, 2023 Op., at 8.

Each of the example facts Axis proffers demonstrate such a dispute. For example, Axis argues that one such fact is that "[t]he insured CFO is aware that the 'subject matter [of the

2

investigation] in question – contract revenue – is core to the company's business." Mot. for Recons., at 5. However, there is a dispute regarding the CFO's subjective knowledge of that fact. Axis understandably reads this as the CFO believing there was a significant, structural issue in reporting that could reasonably give rise to a claim. Another reading of this fact is that there was an issue with revenue reporting that, at the end of the day, there was more likely an insignificant error that could be easily corrected without reasonably giving rise to a claim. Even though a financial metric is core to a company's *business* does not mean that any small issue arising that pertains to that metric leads to a core *problem*.

As another example, Axis points to the CFO and controller exchanging a series of text messages about making a presentation to the Audit Committee about their concerns or "[e]lse we will miss filing deadline [sic] which might be considered as irresponsible if we raise it too late." Mot. for Recons., at 6. Axis's fair reading of this text is that this again shows Cantaloupe officials' subjective knowledge that the officials believe that they will miss a filing deadline which could reasonably give rise to a claim. However, another fair reading of such a message is that Cantaloupe officials' subjective knowledge at this point was that the CFO heard that the CEO may terminate her employment and that the CFO was saying what she could do to save her job. *See id.* Such a text does not establish that the CFO had undisputable knowledge of the extent of the same potential revenue reporting issue. As the Court stated previously, there is "a material dispute of facts regarding what Cantaloupe, by and through its officials, knew regarding the *extent* of the alleged fiscal issues at the time in question." Nov. 28, 2023 Op., at 10.

Finally, *Selko* does not create a wholly objective standard but rather creates a "hybrid subjective/objective" test. *Pelagatti*, 2013 WL 3213796, at *6. Axis asks that *Selko* be reduced to having the Court only examining "the undisputed known facts to determine whether an

objectively reasonable insured would have expected a claim, without regard to Cantaloupe's subjective expectations." Mot. for Recons., at 6. However, such an approach, as claimed, would convert *Selko* to an objective test, omit the critical analysis of determining the insured's *subjective* knowledge of then-existing facts, and most critically, potentially vitiate the crucial role of the jury. In this case specifically, the jury must determine Cantaloupe's subjective knowledge of then-existing facts, that is, to what degree a Cantaloupe official knew about the financial issues "[b]ased on [his or her] perceptions, feelings, or intentions, as opposed to externally verifiable phenomena" and then determine whether a Cantaloupe official with knowledge of the then-existing extent of the potential revenue report issue knew that a claim could arise or that one reasonably could arise. *See Subjective*, Black's Law Dictionary (11th ed. 2019). Whether Cantaloupe officials subjectively knew that the facts at the time could lead to a claim or instead constituted a minor financial irregularity couched in the-sky-is-falling language is in dispute. Thus, the Motion for Reconsideration is denied. An appropriate order follows.

BY THE COURT:

_____
GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE